[Crim. No. 4221.   First Dist., Div. Three.   Apr. 2, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD E. BLAKE, Defendant and Appellant.

706

Francis Berton Perry, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Keith E. Pugh, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

SALSMAN, J.—Defendant, together with Richard Underwood and William Croxall, was indicted for an alleged violation of Penal Code section 211 (robbery) ; Penal Code section 217 (assault with a deadly weapon with intent to commit murder), and violation of Health and Safety Code section 11500 (possession of narcotics). Croxall pleaded guilty to robbery, first degree, and also guilty to the lesser included offense of assault with a deadly weapon. Disposition of the charges against Underwood does not appear in the record before us. Defendant waived jury trial and in trial before the court he was found guilty of robbery, first degree, and of assault with a deadly weapon. Defendant was found not guilty of the charge of possession of narcotics.  The defendant contends on this appeal that the evidence is insufficient to sustain his conviction. He argues that his guilt was not established beyond reasonable doubt. We do not weigh the evidence to redetermine this issue. The test we must apply to the appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911] ).

 The record before us forcefully refutes defendant's charge, and reveals proof of guilt more than sufficient to support the "substantial evidence" rule. The evidence was that

on Sunday morning, January 7, 1962, defendant met William Croxall and Richard Underwood at a restaurant in San Francisco. They asked defendant to drive them to a friend's place where they were to collect a debt. The defendant drove to 32nd Avenue, between Clement and Geary, where he parked the car. Croxall and Underwood left the vehicle and walked back to Clement, turned the corner and proceeded to the Lincoln Park Pharmacy on Clement. They entered the drugstore, and at gun point directed the proprietor to the back room where Underwood tied him to a pole. While Underwood was busy in the back room, Croxall took care of the trade, waiting on several customers and dutifully ringing up sales on the cash register. Between sales, Croxall gathered up all the narcotics he could find, scooped the cash out of the cash register, and after some 12 or 13 minutes both Croxall and Underwood departed. As they ran out into Clement Street they bumped into the proprietor, who had freed himself and escaped through a side door. Underwood and Croxall ran around the corner of 32nd Avenue and down to the car where defendant was waiting. Defendant noticed that Underwood had a gun when he returned, and that Croxall was "out of breath." Defendant was told to drive away. He left the curb rapidly, drove to Geary Street and turned west towards the Great Highway leading to Skyline Boulevard. In the meantime the proprietor had encountered a Mr. Borg, and the latter, in company with a Mr. Thompson, pursued defendant's car. The chase continued for several miles—through Golden Gate Park and beyond Lake Merced towards Westlake. Borg testified that on two occasions shots were fired at his car from persons in defendant's car. As the two cars proceeded south on the Great Highway they attained a speed of 90 miles per hour. Defendant's car turned off the highway into a dead end street in the residential section of Westlake. When the Borg car came up, Underwood took his gun and threatened Borg, and the latter then left the scene and returned to the drugstore. Defendant drove south to Half Moon Bay where officers stopped the car and arrested all parties. As defendant's car stopped, a bag, later found to contain narcotics, was thrown from his car. Upon search other narcotics were found in the car also. Defendant Blake had $71.85 on his person; Croxall had $34.54 and Underwood had $58.62. Approximately $120 in cash had been taken in the robbery.

Defendant argues that all he did was to drive the car; that he had no knowledge a robbery was to take place, or that one

708

in fact did take place, and hence he is not guilty of any offense. Testimony to this effect was given by defendant and also by Croxall. It obviously made little impression on the trial judge when he weighed the testimony of all witnesses and considered all the evidence. As the court said in *People* v. *Hall*, 87 Cal.App. 634 [262 P. 50]: "Few criminals would ever be convicted if their explanations were always accepted as gospel truth." Here, at time of arrest, one of the arresting officers, Fred Ceranski, of the Half Moon Bay Police Department, asked defendant if he had knowledge that a robbery was going to take place, and although defendant did not make a verbal answer, he nodded in the affirmative. The total amount of cash taken in the robbery could not be accounted for without including some cash in possession of defendant, since the amount possessed by Croxall and Underwood did not equal the total loot, and there had been no time or place to spend any. Moreover, defendant had knowledge that something unusual had occurred when Croxall and Underwood ran back to the car, and when he saw Underwood's gun. Borg's testimony of the long chase at high speed and of shots being fired as his vehicle pursued defendant's, and threats made by Underwood when defendant's car ran into a dead end street, is persuasive evidence in support of the trial court's finding of guilt.

Section 31 of the Penal Code defines principals as: "All persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission. . . ." " 'Aid' means to assist, to help or to supplement the efforts of another." (*People* v. *Ellhamer*, 199 Cal.App.2d 777, 781 [18 Cal.Rptr. 905].) " 'Abet' means to knowingly and with criminal intent promote, encourage or instigate, by act or counsel, or by both act and counsel the commission of a criminal offense." (*People* v. *Ellhamer, supra*.) The question of whether or not a person has aided and abetted the perpetrators of a crime is one of fact for the trier of fact to decide from all the circumstances proved. (*People* v. *Kamm*, 178 Cal.App.2d 863, 865 [3 Cal.Rptr. 387].)

We conclude there is substantial evidence to support the conclusion of the trial judge finding the defendant guilty. From the evidence before the trial court, a portion of which has been recited herein, it is apparent that there was an abundance of evidence from which the judge could reasonably

infer that defendant here aided and abetted Croxall and Underwood in the commission of the robbery and the assault, and was therefore guilty as charged.

Judgment affirmed.

Draper, P. J., and Devine, J., concurred.